UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOWARD J. RUBIN and ANN T. RUBIN,

      Plaintiffs,

v.

                                            CASE NO.: _____

PORTFOLIO RECOVERY ASSOCIATES,     VERIFIED COMPLAINT
LLC, a Virginia limited liability company,    FOR UNLAWFUL DEBT
                                        COLLECTION PRACTICES

            Defendant.              JURY TRIAL DEMANDED

      **COME NOW** Plaintiffs, HOWARD J. RUBIN and ANN T. RUBIN (hereinafter together, the "Rubins" or "Plaintiffs"), by and through the undersigned law firm and sue Defendant, PORTFOLIO RECOVERY ASSOCIATES, LLC, a Virginia limited liability company, (hereinafter "PORTFOLIO" or "Defendant"), and allege as follows:

## PRELIMINARY STATEMENT

      1.     Plaintiffs bring this action pursuant to 15 U.S.C. § 1692 *et seq.*, the Fair Debt Collection Practices Act (the "FDCPA").

## JURISDICTION AND VENUE

      2.     This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and pursuant to 28 U.S.C. § 1331.

      3.     Venue is proper in this district because the acts, transactions and occurrences giving rise to this cause of action occurred in this district, Plaintiffs reside in this district, and Defendant transacts business in this district.

## PARTIES

4.      Plaintiff, HOWARD J. RUBIN, is a natural person who resides in the City of Land O'Lakes, County of PASCO, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.      Plaintiff, ANN T. RUBIN, is a natural person who resides in the City of Land O'Lakes, County of PASCO, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6.      PORTFOLIO is a limited liability corporation with a registered office address of 120 Corporate Boulevard, Norfolk, Virginia 23502, and is a "debt collector," as that term is defined by 15 U.S.C § 1692a(6).

7.      All Defendant's conduct alleged herein by Plaintiff was authorized, approved and/or ratified by one or more officers, directors, or managers of Defendant,  and/or Defendant knew in advance that Defendant's agents or employees were likely to so conduct themselves and allowed to so act with conscious disregard of the rights and safety of others.  The alleged conduct was despicable, fraudulent, oppressive, and done with knowledge, intent, and malice.

8.      At all times mentioned herein, Defendant's agents or employees were acting within the course and scope of such agency or employment and was acting with the consent, permission, authorization, and direction of Defendant.

## FACTUAL ALLEGATIONS

9.      Prior to 1999, Plaintiffs incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) namely a debt with MBNA credit card bearing an account number with the

2

last four digits of 0503 in the combined approximate amount of $22,356.91, which was used by Plaintiffs for personal, family, and household purposes (hereinafter the "Alleged Debt").

10.     Sometime thereafter, the Alleged Debt was consigned, placed or otherwise transferred to Portfolio for collection from Plaintiffs.

### Lawsuit to Collect Time-Barred Debt

11.     On June 14, 2007, Defendant filed a three count lawsuit, (hereinafter the "Lawsuit") against the Plaintiffs in state court for the Sixth Judicial Circuit in and for Pasco County alleging breach of contract, account stated, and money lent. A copy of the Lawsuit is attached hereto as Exhibit "A".

12.      The Lawsuit included a copy of the credit card agreement between the creditor and the Plaintiffs, which states that Delaware law would apply to the agreement. See Exhibit "A".

13.     PORTFOLIO sought to recover the Alleged Debt plus attorney's fees and costs in the Lawsuit, even though the statute of limitations had expired based upon the application of Delaware law.

14.     The Rubins moved to Florida from Pennsylvania in July, 1999 and have lived in Florida continuously and uninterrupted ever since that time.

15.     The Rubins have not made any payments or used the credit card identified above since 1999.

16.     The statute of limitations to collect the Alleged Debt under Delaware law was never tolled because the Plaintiffs have continuously and uninterrupted resided in Florida since July, 1999.

3

17.     The Saxon Gilmore law firm filed a motion to dismiss the Lawsuit on February 17, 2010.

18.     The Plaintiff filed a Notice of Voluntary Dismissal on February 17, 2010.

19.     The Defendants violated 15 U.S. C. §1692(e) of the FDCPA by using false or misleading representations to collect or attempt to collect a debt and 15 U.S.C. §1692(f) for unfair or unconscionable means to collect or attempt to collect a debt.

20.     The above-described collection efforts by Defendant were made in violation of the FDCPA including, but not limited to, all of the abovementioned provisions of the FDCPA.

21.     Defendant's illegal and abusive collection activities as more fully described above were the direct and proximate cause of emotional distress on the part of Plaintiffs.  Plaintiffs have suffered actual damages as a result of these illegal collection communications by Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## TRIAL BY JURY

22.     Plaintiffs are entitled to and hereby respectfully demand a trial by jury on all issues so triable.  U.S. Const. Amend. 7.  Fed.R.Civ.P.38.

## CAUSE OF ACTION

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 *et seq.*

23.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

4

24.    The foregoing acts and omissions of Defendant constitute violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, with respect to Plaintiffs.

25.    As a result of Defendant's each and every violation of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 for each Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that judgment be entered against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendant for Plaintiffs;

- for an award of statutory damages of $1,000.00 for each Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) against Defendant for Plaintiffs;

- for an award of costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant for Plaintiffs; and

- for such other further relief as may be just and proper.

**MICHAEL H. ROSEN, ESQ.**
Florida Bar No. 710393
e-mail: mrosen@saxongilmore.com
**SAXON, GILMORE, CARRAWAY & GIBBONS, P.A.**
201 E. Kennedy Blvd., Suite 600
Tampa, Florida 33602
Phone: (813) 314-4500
Facsimile: (813) 314-4555

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF FLORIDA )
)  ss
COUNTY OF PASCO )

I, **HOWARD J. RUBIN**, having first been duly sworn and upon oath, depose and say as follows:

1. I am one of the Plaintiffs in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and the facts contained in it are true and correct under penalty of perjury.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendant, cause unnecessary delay to Defendant, or create a needless increase in the cost of litigation to Defendant, named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint, if any, is a true and correct copy of the original.

**HOWARD J. RUBIN**

The foregoing instrument was sworn to and subscribed before me this 20 day of April, 2010, by HOWARD J. RUBIN, who is personally known to me or has produced FDL R158-320-46-127-0 (type of identification) as identification.

KATHERINA M LOPEZ
Notary Public, State of Florida
My Commission Expires September 24, 2013
Commission # DD 927842

Notary Public – State of Florida
My Commission Expires:

6

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF FLORIDA              )
                             ) ss
COUNTY OF PASCO               )

I, **ANN RUBIN**, having first been duly sworn and upon oath, depose and say as follows:

1. I am one of the Plaintiffs in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and the facts contained in it are true and correct under penalty of perjury.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendant, cause unnecessary delay to Defendant, or create a needless increase in the cost of litigation to Defendant, named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint, if any, is a true and correct copy of the original.

_____
**ANN RUBIN**

The foregoing instrument was sworn to and subscribed before me this 20 day of April, 2010, by ANN RUBIN, who is personally known to me or has produced FDL (type of identification) as identification.  R-150-053-63-747-0

_____
Notary Public – State of Florida
My Commission Expires:

KATHERINA M LOPEZ
Notary Public, State of Florida
My Commission Expires September 24, 2013
Commission # DD 927842

7

IN THE CIRCUIT COURT IN AND
FOR PASCO COUNTY, FLORIDA

CASE NO: 51-2007-CA-2795

PORTFOLIO RECOVERY ASSOCIATES,
LLC

Plaintiff,

vs.

ANN M RUBIN
HOWARD J RUBIN

Defendant(s)

COMPLAINT FOR DAMAGES
ATTORNEY BAR NO: 630314

/

COMES NOW the Plaintiff, PORTFOLIO RECOVERY ASSOCIATES, LLC  by and through its undersigned counsel and sue(s) the Defendant(s), ANN M RUBIN and HOWARD J RUBIN and states as follows:

GENERAL ALLEGATIONS

1. This is an action for damages that is within the jurisdictional limits of this Court.

2. Defendant(s) is/are resident(s) of this County.

3. In the event this matter is resolved by way of default a reasonable attorney's fee would be $750.00.

4. Plaintiff is the owner and holder of the debt pursuant to an assignment from the original lender MBNA America Bank (hereinafter "the Bank").

5. The Bank, at Defendants special instance and request issued a credit card with the account number of 5329041821140503 to the Defendant(s).

6. That the Plaintiff is due interest from the charge off date or date of purchase (whichever is later) which is July 13, 2005.

7. All conditions precedent to the bringing of this action have occurred.

COUNT I (Breach of Contract)  3

Plaintiff realleges paragraphs 1 through 7 above and further states:

EXHIBIT " A "

8. Defendant(s), by use of the credit card, have accepted the terms and conditions of the credit card holder agreement.  (See Exhibit "A" attached hereto).

9.  The Defendant(s) has breached the Agreement by failing to comply with the terms of the Agreement.

10.  Defendant(s) caused various charges to be made through the use of said card.

11.  Defendant(s) owe Plaintiff the sum of $22,356.91 that is due with interest.

12.  The contractual interest rate is 9.000%.

13.  Plaintiff has made demand upon Defendant(s) for payment.

14.  Defendant(s) has/have failed and refused to pay the sum due and owing to the Plaintiff.

15.  Plaintiff is obligated to pay the undersigned a reasonable fee for which Defendant(s) is/are liable pursuant to the cardholder agreement.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant(s), ANN M RUBIN and HOWARD J RUBIN in the principal amount due of $22,356.91, together with interest, court costs, reasonable attorney's fees and any other relief this court may deem just and proper.

### COUNT II (Account Stated)

Plaintiff realleges paragraphs 1 through 7 above and further states that:

16.  The Defendant(s) requested an account, which is owned by the Plaintiff, and the credit card holder agreement was sent to the Defendant.

17.  Before the institution of this action Plaintiff or Plaintiff's assignor and Defendant(s) had business transactions between them and they agreed to the resulting balance.

18.  Plaintiff or Plaintiff's assignor rendered a Statement of it to Defendant(s) and the Defendant(s) did not object to the statement.

19.  Defendant(s) owes Plaintiff $22,356.91, that is due with interest at the rate of 9.000% per year on the account.

WHEREFORE, Plaintiff demands judgment in its favor and against the Defendant(s) ANN M RUBIN and HOWARD J RUBIN in the principal sum of $22,356.91, together with interest, court costs and any other relief which this Court may deem just and proper.

**COUNT III (Money Lent)**

Plaintiff realleges paragraphs 1 through 7 above and further states that:

20. The Defendant(s) owes Plaintiff $22,356.91 that is due with interest since July 13, 2005, for money lent by Plaintiff's assignor to Defendant(s) at various times.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant(s), ANN M RUBIN and HOWARD J RUBIN in the principal amount due of $22,356.91, together with interest, court costs and any other relief this court may deem just and proper.

HAYT, HAYT & LANDAU
Attorneys for Plaintiff
7765 S.W. 87 Avenue, Suite 101
Miami, FL  33173
(305) 661-6660

BY: _____
David C. Rubin

06-14348-0

unemployment in MA or VT. No family leave in CT, MA, MD, MN, NH, NY, PA, C, TX.

Underwriting Companies-Policy Numbers:
Unemployment American Security/JAO1 (79)31, LO1 NY D9731, JJP51/NHI only); Unemployment American Security /SCLO1 (79)31 (6692) and LO1C(P-Standard German /SCLO1 (79)31 only); Disability. Union Security Life /L1-Z-Standard Company Life (DX-only) / L1-Z (87)31 JJ31A, Family Life /FLP-JJ (87)31 in NY, FLP-JJ-11D9731 in FL, FLP-JJJ (87)31 in LT IN, FL-JJ-KSI 12931 in OK, FLP-VA, D9631 in VA, In WI; Standard Company /FLP (497)1 in KS, FL-J-JWI (497)1 Life / FLP-VT (497)1 in VT. Soliciting agents for Union Security Florida are Charles M. Gordon and Pamela Crotty respectively.

This product is not an insured deposit product. Is not FDIC Insured, is not guaranteed by MBNA/MBNA Bank, N.A and is not a condition of obtaining credit.

*Last past due and over-credit-limit amounts, in MA, coverage pays 3% of the balance on your date of disability, up to $P31. In WI, coverage pays the minimum payment due on...
reinstated only.

**The number of unpaid benefit payments will not exceed 9 for either leave, 12 for unemployment in AK, CT, DE, MD, MN, NH, NY, PA, SC & TX; 12 for disability except in AK, CT, DE, MD, MN, NH, NY, PA, SC, TX, CT, WI.

NC, NM, TX. Residents only: To purchase coverages separately, write to American Security Group, P.O. Box 30353, Atlanta, GA 30353. Application will be sent to you.

## Credit Card Agreement

### General

In this Card Agreement, the words "you" and "your" refer to each and all other persons who accept a credit card or are or order in account we hold, this Credit Card Agreement (the "Agreement") consists of this document and the terms and conditions set forth in the Required Federal Disclosures section of the account, which is incorporated herein and made a part hereof. The words "we", "our", and "MBNA America" mean MBNA America Bank N.A.

When you accept or use the account, you agree to the terms in this Agreement. You should keep a copy of this Agreement.

You consent to and authorize the monitoring and/or recording of your calls with representatives of MBNA America and its affiliates.

All capitalized terms not defined herein shall have the meaning as defined in the Required Federal Disclosures section of your card carrier.

### Information Gathering and Sharing

From time to time, we may obtain updated information about you, including, for example, credit information, and may share information about your experience with us, with credit reporting agencies and others, including about your purchases, and among companies affiliated with us. You may request that information about you not be shared among our affiliates, except information pertaining to a transaction or experience between you and us (an affiliate), by writing us at MBNA America, P.O. Box, Wilmington, DE 19850-7302. Please include your home, address, home phone number and all MBNA America account numbers.

If you believe that inaccurate or incomplete information about you or your account has been shared by us with a credit reporting agency, write to us at: MBNA America, P.O. Box 15328, Wilmington, DE 19850-5038, Please include your name, address, home phone number, and account number, and explain which information you believe is inaccurate or incomplete.

### How To Use Your Account



Certain establishments may cash your personal checks upon presentation of your card. In the event we are required to pay the amount of a check cashed in this way because the check is not paid for any reason, we will charge your account for a Cash Advance in the amount of the check and any processing charge we actually paid.

If you permit any person to have access to your card or account number with the authorization to make a charge, you may be liable for all charges made by that person, including charges for which you may not have intended to be liable.

The transaction date for Check Cash Advances and check cashed is the date you or the person to whom the check issued deposits or cashes the check. The transaction date for a returned payment is Bank Cash Advance is the date that the corresponding payment posted to your account.

You may reinstate a stop payment on Check Cash Advance by providing us with the check number, dollar amount and payee exactly as they appear on the Check Cash Advance, and we accept any payment requests on Check Cash Advance. Oral payment on your account.

You may not use a postdated Check Cash Advance to obtain credit under your account. If you do postdate a Check Cash Advance, we may, at our discretion, honor or pay it whether or not the postdated Check Cash Advance is unpaid in the postpaid the postdate to pay payment or return the Check Advance. We are not liable to you for any loss or expense incurred, if by postdating out of the action we elect to take.

## Repayment

You promise to pay us the amounts of all credit you obtain this includes all purchases, cash advances, fees, charges, and finance charges.

You must pay each month at least the minimum payment shown on your monthly statement. If minimum payment balance is otherwise credited to your account, we will not pay interest on such amounts. Your payment will be allocated in a manner to determine. We may allocate your payments in a manner with the higher interest transactions with lower interest balances and the higher rate of interest being paid before any other existing balance. All interest being paid before any other account for the billing cycle in each payment is received; however, your available credit will be increased by the

## Charges Made In Foreign Currencies

If you incur a charge in a foreign currency, the charge will be converted by Visa (International) or MasterCard International, in accordance with operating regulations or operations in effect at the time the transaction is processed. Currently, these regulations and currency conversion rate to be used is either the wholesale market rate or a government-mandated rate in effect one day prior to the processing date, increased by one percent in each case by the MasterCard and relate this one percent as compensation for currency conversion. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date.

## Payment Holidays

We may allow you, from time to time, to omit a monthly payment. We will notify you when such payment option is available. If you omit a payment (if the payment option is available, if permitted, if any, will accrue on your balance) and the minimum payment that you make a payment in accordance with this Agreement, each month will resume following your payment holiday.

## Billing Cycle

A billing cycle balance is on the day that the closing date figures on your account cancelled monthly payment and statement for the current month.

## Account Fees and Charges

Account Fees. The following fees, which are set forth on your card carrier, are assessed as a purchase. Annual Fee. In which such carrier account (1) at least (2) in the billing cycle charged on the last day of a billing cycle, and (3) if your account is to enroll on the last day in the billing cycle. Returned Payment Fee. If a payment sent by you over the credit limit (3) a Returned Payment Fee. If a payment on your account is returned for insufficient funds or for any other reason, even if it is paid upon subsequent presentment (4) a Returned Check Fee (5) a return

**Abandoned Property Charges** Unless prohibited by applicable law, we will charge your account, as a Purchase, for any costs incurred by us associated with computing with state abandoned property laws.

• **Additional Account Fees and Charges** Please review the acquired Federal Disclosures section of your card carrier for additional fees and charges that may apply to your account.

## Benefits

You will be offered certain benefits which will be subject to the restrictions outlined in the benefits brochure provided to you by MBNA America. MBNA America reserves the right to adjust, add, or delete benefits and services at any time and without notice.

## Reasons for Requiring Immediate Payment

You will be in default and we can require immediate payment of all amounts your owe, if: (1) you fail to make any payment by the Payment Due Date (2) your Total Balance exceeds your credit limit, or if your New Balance including Cash Advance credit limit for you, Advance credit balance exceeds your Cash Advance credit limit or (3) you fail to abide by any other terms of this Agreement.

If you default, unless prohibited by applicable law, we can also require you to pay the collection costs and court costs we incur. In any collection proceeding, and a reasonable attorney's fee if we refer your account for collection to an attorney who is not our salaried employee.

Our failure to exercise any of our rights when you default does not mean that we are unable to exercise these rights upon later default.

## Refusal to Honor Your Card

We are not liable for any refusal to honor your card or any Cash Advance or for any retention of your card by us, any other bank, or any seller or lessor of goods or services.

## Termination

We may suspend or terminate your right to obtain credit at any time for any reason. Your obligations under this agreement continue even after your right to obtain credit has been suspended or terminated.



opportunity to reject the change, and if you reject the change in the manner provided in such correspondence, we may terminate your right to receive credit and may ask you to return all credit devices as a condition of your rejection. The Amended Agreement (including any higher rate or other higher charges or fees) will apply to the entire unpaid balance, including the balance existing before the amendment become effective. We may replace your credit card with another card at anytime

## Assignment

We may at any time, and without notice to you, assign your account, any sums due on your account, any balances, or rights or obligations under your account or our agreement or our any person or entity. The person or entity to whom we make any such assignment shall be entitled to all of our rights and/or obligations under this Agreement, to the extent assigned

## Credit Limit

Your credit limit is shown on your card and carrier and generally on each monthly statement. We may change your credit limit at any time from time to time, and we will notify your credit limit or the total amount of credit outstanding at any time must not be more than your credit limit. We may also establish a separate credit limit for Cash Advances. If we do, your outstanding Cash Advance balance just exceed that Cash Advance limit.

## Request for Credit Over Your Credit Limits

If you request credit in any form which, if granted, would result in increasing your total outstanding balance in your Cash Advance balance, including authorized transactions you have posted to your account, being more than your credit limit or your Cash Advance limit, we have determined once for more than the respective credit limits before the request was you, (whether or not such limit, if we have established once for more than the respective credit limits before the request were request without permanently raising your credit limit, we may, if we honor the request and treat the amount which is credit limit (2) honor credit limit as immediately due (3) refuse to honor your request. We may refuse the person who made the request that it has been refused. If we refuse to honor a Check Cash Advance or Balance Transfer, we may do so by advising the person presenting the Check Cash Advance or Balance Transfer that credit has been refused, that there are insufficient funds to pay the Check Cash Advance or Balance Transfer, or in any other manner

If we have previously honored requests for credit over your credit limit, it does not mean that we will honor further

## Unauthorized Use of Your Card

You may be liable for the unauthorized use of your card. You will not be liable for unauthorized use that occurs after you notify us at LIBOR America, P.O. Box 15521, Wilmington, DE 19850 or call us toll-free at 1-800-783-4701, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for unauthorized use of your card will not exceed $50.

## Governing Law

This Agreement is made in Delaware. It is governed by the laws of the State of Delaware without regard to its conflict of laws principles, and by any applicable federal laws. You agree that any litigation brought by you against us arising out of this account or this Agreement shall be brought in a court located in the State of Delaware.

If any part of this Agreement is found to be invalid, the rest remains effective. Our failure or delay in exercising any of our rights under this Agreement does not mean that we are unable to enforce those rights later.

All persons who initially or subsequently request, accept, or use the account are individually and together responsible for repaying the balance. If two or more persons are responsible to pay any outstanding balance, we may reduce the balance by any outstanding ... unexpired cards outstanding under the account have been returned to us and the balance is paid in full.

You must return all credit cards to us on request.

## Platinum Plus Credit Insurance Benefits, Limitations, Costs and Exclusions

Platinum Plus Credit Insurance pays your minimum monthly payment,* up to your balance on the date of loss, until you return to work.* If you are involuntarily unemployed, you may be disabled (or if you or your spouse take covered leave), inside the Loan Extension pays your insured outstanding balance up to $10,000 if you die.



**Eligibility:** One insured per account (named must be the primary cardholder or co-applicant, not deceased ... eligible)...

---

application filed, 1974 - on the date of loss. 1974 - before coverage effective date for unemployment. Employees of professional corporations may be eligible.

**Coverage and Benefits: Platinum Plus** covers your death, involuntary unemployment from your job (loss of your job at another job ... state), unwanted labor dispute or lockout, total disability, (illness or injury if you are unable to perform the material & substantial duties of your job, for any job within the first 11... max, in CA, HI, NJ, TX VI; 12 mos. in PA); your or your spouse's unpaid leave of absence from employment due to the care of your newborn or newly adopted child or an incapacitated family member (or spouse, child, or child ...

**Exclusions:** Life excludes suicide within the first 6 months of coverage (not MO & MO), involuntary unemployment excludes retirement, resignation, voluntary forfeiture income, job loss not provided or unable to continue to ... disability (preexisting conditions ... not covered in WV and ... military discharge is not covered in MO, Disability excludes normal pregnancy or childbirth (not in CA, GA & WV), intentionally self-inflicted injuries (not MO), or a pre-existing medical condition during the first 6 months of coverage (not KS). Family leave benefits are not paid if your preexisting state unemployment benefits or are denied.

This is only a brief description of coverage, and coverage may vary by state. Please refer to your certificate for a full explanation of coverage.

**Costs:** Per $100 per month of Average Daily Balance. Life = ..., Disability = ..., Unemployment = ...; Family Leave = ...
AK, AL ..., AR ...; CA ..., CO ..., CT ..., DE ..., FL ..., GA ..., HI ..., IA ..., ID ..., IL ..., IN ..., KS ..., KY ..., LA ..., MA ..., MD ..., ME ..., MI ..., MN ..., MO ..., MS ..., MT ..., NC ..., ND ..., NE ..., NH ..., NJ ..., NM ..., NV ..., NY ..., OH ..., OK ..., OR ..., PA ..., RI ..., SC ...